UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES MARSH,

                            Plaintiff,

                  v.

**Hon. Hugh B. Scott**

06CV464

(CONSENT)

**Order**

CO BELLINGER, et al.,

                            Defendants.

_____

Before the Court are (1) plaintiff's motion for partial summary judgment as to liability (Docket No. 64[1]), and (2) defendants' motion for summary judgment dismissing this case (Docket No. 66[2]). The parties have consented to proceed before the undersigned as Magistrate Judge (Docket No. 41). Responses to plaintiff's motion were due by September 11, 2009, with any reply by plaintiff due by October 2, 2009 (Docket No. 65), while response to the defense motion was due by September 18, 2009, and any reply was due by October 2, 2009 (Docket

---

[1] In support of his motion, plaintiff submits his affirmation with exhibits, Docket No. 64, his motion for a hearing on damages, Docket No. 77, and his reply affirmation, Docket No. 78 (also in opposition to defendants' motion).
     In opposition, defendants submit their memorandum of law, Docket No. 79; the declaration of Harold Chaffee with exhibits, Docket No. 80; and their further memorandum of law, Docket No. 81.

[2] In support of their motion, defendants submit their respective declarations, Docket Nos. 69, 71-75, some with exhibits; the declaration of their counsel (with exhibit, excerpts of plaintiff's deposition testimony), Docket No. 68; their memorandum of law, Docket No. 67; statement of facts, Docket No. 70; and their further memorandum of law, Docket No. 81.
     In opposition, plaintiff submits his reply affirmation, Docket No. 78.

No. 76). Both motions were deemed submitted, without oral argument, on October 2, 2009 (Docket Nos. 65, 76).

## BACKGROUND

Plaintiff is suing various New York State Department of Correctional Services ("DOCS") corrections officers and employees at the Willard Drug Treatment Campus ("Willard") for cruel and unusual punishment arising from an alleged assault upon him on September 14, 2005, and deprivation of his liberty interest in the facility for failing to protect him from an earlier assault by another patient/parolee at Willard (Docket No. 1, Compl.; see Docket No. 3, Pl. Supp. to Compl.; Docket No. 52, Pl. Affirm. ¶ 2). Remaining defendants in this action are corrections officers, an area supervision parole officer, and the superintendent at Willard (see Docket Nos. 14, 29 (Ans.)); he did not name as a defendant the Department of Correctional Services. Plaintiff amended his Complaint on August 13, 2008 (Docket No. 46), which the remaining defendants answered on August 15, 2008 (Docket No. 48). The claims against defendants Bonds and Dean were terminated by the Court in granting plaintiff leave to appear in forma pauperis (Docket No. 8).

Specifically, on September 3, 2005, plaintiff claims that he was assaulted by another parolee with staff present but not protecting him (Docket No. 46, Am. Compl. at 3). Plaintiff alleges that defendants CO Bellinger, Taft, Stermer, Chaffee, and Colombai assaulted him on September 14, 2005, and deprived him of his liberty interest in the facility for failing to protect him from an earlier assault by another patient/parolee at Willard (id.; Docket No. 1, Compl.; see Docket No. 3, Pl. Supp. to Compl.; Docket No. 52, Pl. Affirm. ¶ 2). Plaintiff contends that defendant CO Hart watched the incident, laughed, and did not intervene. He also claims that

2

defendant Sgt. Crans also observed the incident and did not intervene to stop it. (No. 46, Am. Compl. at 3.) Plaintiff also claims that defendants searched his locker without appropriate supervision, violating plaintiff's liberty interest (id.). He seeks monetary damages of $5 million (id. at 4).

Plaintiff also contends that defendants Superintendent Melvin Williams and Area Supervision Parole Officer John Pick removed plaintiff from Willard on a parole warrant for fighting/violent conduct. Plaintiff alleges that Williams and Pick never investigated the charge. (Docket No. 1, Compl. at 5; Docket No. 46, Am. Compl. at 4.) Plaintiff contends he was wrongfully removed from the Drug Treatment program (Docket No. 46, Am. Compl. at 3, 4).

*Defense Motion–Factual Allegations*

Since only defendants submitted a statement of facts (Docket No. 70) and plaintiff did not file his own statement or a countering statement to defendants', cf. W.D.N.Y. Loc. Civ. R. 56.1(c), defendants' statement of facts will be deemed admitted by plaintiff.

Defendants describe the program plaintiff was admitted to at Willard as a drug treatment program for parolees and an alternative to incarceration (Docket No. 70, Defs. Statement ¶ 2). The New York State Division of Parole is responsible for treatment and monitoring of parolees' progress while DOCS is responsible for security (id. ¶¶ 4, 3), with area supervision parole officer Pick, a Division of Parole employee at Willard and the other defendants as DOCS corrections officers or officials (id. ¶¶ 5, 6-7). Parolees at Willard are required to be engaged in programs related to their treatment, evaluated weekly and their successful completion determined by an Evaluation Review Committee and confirmed by the Superintendent of Willard (Williams) and

the parole area supervisor (Pick). After one month, plaintiff was given negative evaluations and was required to repeat the four-week program, also referred to as "recycling" (id. ¶ 9).

*Failure to Protect Claim*

Plaintiff's claims can be divided into three incidents. First, is the assault by another inmate on September 3, 2005. On that date, plaintiff claims that an inmate named "Quenoness"[3] assaulted him (Docket No. 70, Defs. Statement ¶ 10; Docket No. 68, Def. Atty. Decl. Ex. A, Marsh EBT Tr. at 41, 46-48 (hereinafter "Marsh EBT Tr.")), but plaintiff did not inform any of the defendants before the assault that he felt threatened by Quenoness, only speaking to a non-party Corrections Officer, the regular "DI" that plaintiff should be relocated away from Quenoness because they did not see eye to eye (Marsh EBT Tr. at 44-45; Docket No. 70, Defs. Statement ¶¶ 10-11).

*Excessive Force Claims*

On September 14, 2005, corrections officers Chaffee and Bellinger searched plaintiff's locker and Chaffee discovered a contraband $10 bill (Docket No. 70, Defs. Statement ¶¶ 12-13). Bellinger, Hart and Taft state that plaintiff then became aggressive and attempted to hit Bellinger (id. ¶ 14; Docket No. 69, Bellinger Decl. ¶ 5; Docket No. 72, Hart Decl. ¶ 5; Docket No. 75, Taft Decl. ¶ 7). Bellinger, Taft, and Chaffee each deny punching or stomping plaintiff (Docket No. 69, Bellinger Decl. ¶ 6; Docket No. 75, Taft Decl. ¶ 8; Docket No. 80, Chaffee Decl. ¶¶ 4, 6, Ex. A (use of force report authored by Chaffee)). Bellinger grabbed one of plaintiff's arms and Taft grabbed the other, wrestling plaintiff to the ground. He continued to struggle until Crans

---

[3]Possibly "Quinones", since the spelling during the deposition arose from plaintiff's report and how that name was spelled there, see Docket No. 64, Pl. Affirm., Ex. 4.

secured plaintiff with mechanical restraints. (Docket No. 70, Defs. Statement ¶ 15.) Stermer arrived and he, Crans, and Chaffee escorted plaintiff to the infirmary (id. ¶ 16). Hart was present but did not participate in restraining plaintiff (id. ¶ 17), while Colombai did not participate in this incident and may not have been at Willard that day (Docket No. 71, Colombai Decl. ¶¶ 7-9; Docket No. 70, Defs. Statement ¶ 18). The officers maintain that they used reasonable amounts of force to control plaintiff following his attempted assault of Bellinger (Docket No. 70, Defs. Statement ¶ 19).

Plaintiff claims that, during this search, the officers accused him of theft, berating him verbally, and attacking him for no reason or justification (Marsh EBT Tr. at 91-96; Docket No. 70, Defs. Statement ¶ 20). He contends that Chaffee, Stermer, Taft, and Colombai stomped on his face, Bellinger held him down and punched him, and Stermer tried to break his arm (Marsh EBT Tr. at 94-96, 97-99; Docket No. 70, Defs. Statement ¶ 20).

*Termination from Willard Drug Program*

Plaintiff's third claim is a denial of due process in the termination from the Willard drug treatment program. Two misbehavior reports were written from plaintiff's alleged assault (Docket No. 70, Defs. Statement ¶ 21; Docket No. 69, Bellinger Decl. ¶ 7, Ex. A). Two days after the alleged assault, plaintiff appeared before the Evaluation Review Committee (or "ERC") and that committee recommended plaintiff's removal from Willard (Docket No. 70, Defs. Statement ¶ 22). This recommendation was confirmed by Williams and Pick, with Pick basing his decision on plaintiff's overall conduct at Willard, including his negative evaluations and the accusations in the Misbehavior Reports (id. ¶ 23). This termination resulted in plaintiff being found in violation of his parole (id. ¶ 24). On October 12, 2005, plaintiff appeared at a final

5

parole hearing where he admitted his violation of parole (id. ¶ 25). On his Misbehavior Reports, plaintiff initially was found guilty but that determination was reversed and the reports expunged (id. ¶ 26).

*Defense Contentions*

In their motion, defendants argue that they did not fail to protect plaintiff on September 3, 2005, because plaintiff did not give them prior notice of any threat (Docket No. 67, Defs. Memo. at 3-4). As for Colombai, Chaffee, Bellinger, Stermer and Taft, defendants contend that they did not violate plaintiff's Eighth Amendment rights, but in good faith exercised reasonable force to maintain or restore discipline, see Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999) (id. at 4-5). As for Hart and Crans, defendants argue that these defendants did not violate plaintiff's Eighth Amendment rights by failing to intervene because either no excessive force was used or there was no opportunity for Hart or Crans to intervene (id. at 6-7). As for Williams and Pick, these defendants also did not violate plaintiff's Eighth Amendment rights for not intervening because they were not involved in the use of force nor were they informed of the incident to allow their intervention (id. at 7-8).

As for plaintiff's due process claim, defendants Williams and Pick contend that plaintiff does not have a liberty interest to be in a particular facility, see Montanye v. Haymes, 427 U.S. 236, 242 (1976). Furthermore, plaintiff plead guilty to his parole revocation and received all the process due in the parole violation. (Id. at 8.) Alternatively, Williams and Pick assert entitlement to qualified immunity in their decision to terminate plaintiff's participation in the drug treatment program at Willard, claiming that the right not to be terminated from that program was not clearly established at that time to make these defendants liable (id. at 8-9).

6

In further reply, defendants now argue that plaintiff is focused on the termination of his parole on March 10, 2005, and arguments that he should not have been assigned to Willard to serve out his parole in the first place. Defendants conclude that this is a new claim not before alleged in the pleadings (Docket No. 81, Defs. Memo. at 2-3). The defendants in this action conclude that they had no role in the termination of parole and these new claims have not been previously alleged and should not be considered by this Court (id. at 3).

As for the search of plaintiff's locker while at Willard, he contests the search under the Fourth (and Fourteenth) Amendment due process clause. Defendants argue that under state law plaintiff while in Willard was under the same rules and regulations as inmates in DOCS custody (id. at 3-4, citing N.Y. Penal L. § 60.04), although Willard is not a "correctional facility," see N.Y. Correct. Law § 70(1)(c) (id.). Thus, defendants conclude that plaintiff lacks a cognizable liberty interest against the search of his locker or a privacy interest in his cell (id. at 4).

*Plaintiff's Motion*

Plaintiff moved for partial summary judgment (Docket No. 64), seeking liability judgment on the pleadings and seeking a hearing on damages (see also Docket No. 77, Pl. Motion for partial summary judgment and hearing on damages). In his motion, he produces evidence of the use of force against him on September 14, 2005 (Docket No. 64, Pl. Affirm., Ex. 2, Inspector General's Report of Interview; photocopies of photographs, Commissioner's reversal of superintendent's hearing, Use of Force Report), relying upon the expunged disciplinary finding and the statement of inmate Andre Beaupre stating that "DI" punched plaintiff in the chest, then put him into a headlock, threw plaintiff to the floor, and that six DI's then circled plaintiff and started kicking him (id., Pl. Affirm. ¶ 3C). As for his deprivation of

7

liberty interest claim, plaintiff relies upon the administrative record for the termination of his parole, noting that John Pick's findings were expunged by the Commissioner (id.. Pl. Affirm. ¶ 3D). As for the failure to protect claim, plaintiff only relies upon the medical report depicting his injuries (id., Pl. Affirm. ¶ 3E). Plaintiff rests upon the expungement orders by the Commissioner as making his prima facie showing of entitlement to relief (id. ¶ 4).

DISCUSSION

I. Applicable Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for

8

trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56.1(a), (b). The movant is to submit facts in which there is no genuine issue, id. R. 56.1(a), while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56.1(b). "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority, id. R. 56.1(d). All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, id. R. 56.1(c). The purpose of these statements, and the appendix of supporting evidence, id. R. 56.1(d), is to summarize and highlight for the Court the material factual issues, the authority in the evidentiary record for the purported facts, and whether the parties believe they are in dispute.

One additional factor here is the fact that plaintiff is proceeding pro se. As such, this Court must liberally construe his pleadings, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam). Plaintiff has not submitted a statement of facts, but in his motion includes exhibits in support of his contentions.

II. Cruel and Unusual Punishment

A. Failure to Protect

First, plaintiff claims that defendants failed to protect him from another parolee on September 3, 2005. As defendants note (Docket No. 67, Defs. Memo. at 3-4), prison officials have a duty to protect prisoners from violence at the hands of other inmates, Farmer v. Brennan, 511 U.S. 825, 833 (1994). But plaintiff needs to establish two elements to state a claim for failure to protect. First, that the deprivation was, in objective terms, sufficiently serious such that the deprivation denied the minimal civilized measure of life's necessities, Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). Second, that the responsible prison official had a sufficiently culpable state of mind amounting to at least deliberate indifference, id.

Plaintiff presents his injury report purportedly from the incident (see Docket No. 64, Pl. Affirm. ¶ 3E. 1, Ex. 4), which is a report of the incident by plaintiff and notes by the treating personnel. There is no indication that he told these defendants about his concerns about the other parolee, Quenoness. All plaintiff presents is that he was injured and his recorded statement that he was punched by the other parolee, without any reference to defendants' failure to protect him. Plaintiff fails to meet the second element for a failure to protect claim, since he fails to allege that defendant had a sufficiently culpable state of mind to be at least deliberately indifferent to plaintiff's situation[4]. Therefore, defendants' motion to dismiss this claim is **granted**.

---

[4]Even review of the Inmate Injury Report for this incident only shows that he had superficial cuts as a result of the altercation, Docket No. 64, Ex. 4. Plaintiff does not show how this was, in objective terms, sufficiently serious such that the deprivation denied the minimal civilized measure of life's necessities,.

B.   Use of Force

1.   Actual Alleged Participants

Plaintiff presents the injuries he suffered from the use of force on September 14, 2005, as well as another parolee's statement witnessing the incident (Docket No. 64, Ex. 2) as support for entry of judgment in his favor on defendants' liability. That parolee, Andre Beaupre, reported that he was missing some money from his cell and the correction officers found money in plaintiff's cell, the officers then asked plaintiff where he got the money from. Plaintiff denied that it was his and then accused the officers of setting him up. Beaupre then states that plaintiff "became a cocky prick to the DI's he was acting arrogant." He claims that DI Harvey then punched plaintiff in the chest. Plaintiff continued to taunt the officers and argue with them. DI Harvey then put plaintiff in a head lock and took him to the floor. Then six DI s circled plaintiff and began to kick him, with Beaupre identifying defendant Stermer as one of the six. (Id.)

From this record, the only apparently unprovoked assault was by a non-defendant, DI Harvey. The remaining claim is whether the restraint of plaintiff involved kicking as he alleged by these defendants. Plaintiff does raise an issue of fact as to whether six corrections officers (including Stermer) kicked him after he was taken to the ground. Thus, defendant's motion for summary judgment dismissing this claim is **denied** as to defendants Bellinger, Chaffee, Colombai, Hart, Stermer, and Taft. Plaintiff's motion for partial summary judgment is also **denied** since defendants in their motion refute plaintiff's contentions. Colombai remains in this case, despite his denials because he did not recall working at Willard or plaintiff's unit on the date in question (see Docket No. 71, Colombai Decl. ¶¶ 7, 8), raising an issue of fact.

11

2. Failure to Intervene

As for defendant Crans, plaintiff alleges that he observed the incident and did not intervene (Docket No. 46, Am. Compl. at 3) and did not allege that he participated in the use of force (cf. Docket No. 70, Defs. Statement ¶ 15 (Crans secured plaintiff with mechanical restraints)). While prison officers have an affirmative duty to intervene to protect the constitutional rights of citizens from the infringement by other officers in their presence, Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994), liability only attaches if there is a constitutional violation by others, that the officer observed or had reason to know that a constitutional violation was occurring, and there was a realistic opportunity to intervene, Allen v. City of N.Y., 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (Docket No. 67, Defs. Memo. at 6). Defendants (as previously argued) contend that no excessive force was used, hence the first element for the duty to intervene is missing (id.). Alternatively, defendants conclude that Crans (and Hart) lacked the reasonable opportunity to intervene (id.). Plaintiff does not assert how Crans (or Hart) could have intervened. The record here, however, presents issues of fact as to the existence of the underlying constitutional violation and whether there was a realistic opportunity to intervene. Whether defendants (or others) stomped and kicked plaintiff or merely used a reasonable amount of force to restrain him (as cited above) is an issue of fact. Also at issue is the duration of the incident and whether it lasted long enough for Crans (or Hart) to intervene, cf. Allen, supra, 480 F. Supp. 2d at 694-95 (jury could conclude officers had reasonable opportunity to intervene). Thus, defendants' motion for summary judgment dismissing these claims as to Crans and Hart is **denied**. Similarly, plaintiff's motion for partial summary judgment as to these defendants also is **denied** due to the contested issues of fact present.

3. Other Defendants

As for defendant Pick, he is an employee of the Division of Parole and had no role whatsoever in the use of force incident of September 14, 2005. His motion for summary judgment dismissing this claim against him is **granted**. Similarly, defendant Superintendent Williams also had no personal involvement in this incident and therefore is **not liable** to plaintiff as to this claim. Williams' motion for summary judgment dismissing this claim against him is **granted**.

III. Violation of Liberty Interest

Plaintiff has [two] different arguments regarding his violated liberty interest. First, he contends that he should not have been in Willard in parole custody since he should have been discharged from parole on March 10, 2005, pursuant to New York Executive Law § 259-j(3-a) (Docket No. 78, Pl. Reply Affirm. ¶ 3D-K). He contends that he satisfied a condition of two years of unrevoked parole supervision from March 10, 2003, to March 10, 2005, hence he should not have been in state custody when these later incidents occurred (id. ¶ 3D). He cites, for the first time, to a pending state court habeas corpus proceeding challenging his parole and incarceration (see id. Ex. 1, In re Marsh v. NYS Div. of Parole, No. 2009-0107 (N.Y. Sup. Ct. Cayuga County) (Verified Ans.)), which became moot upon his release from DOCS custody around August 2009 (id., Ex. 2, letter of Assistant Attorney General Levy to Hon. Mark Fandrich, N.Y.S. Supreme Court Justice, Cayuga County, dated Aug. 5, 2009). But plaintiff alleges this against two departments that are not named as defendants in this action, the Department of Correctional Services and the Division of Parole. In addition, the exhibits plaintiff produces shows an initial determination that he was delinquent on his parole in March 9,

13

2005 (id., Ex. 1, NYS Parole Partner date Mar. 26, 2009). Thus, plaintiff fails to show that he was not properly on parole supervision and, even if he did, that these defendants are responsible for his initial placement on parole. Thus, on this ground, plaintiff's motion for summary judgment is **denied**.

Second, plaintiff contests the later termination of his parole while at Willard (Docket No. 64, Pl. Affirm. ¶ 3D). Plaintiff needs to assert a liberty interest in order to establish a due process claim to the deprivation of that interest. There is no liberty interest in remaining in Willard or being housed at a particular facility, see Montanye, supra, 427 U.S. at 242 (see Docket No. 67, Defs. Memo. at 8). As noted by defendants (id.), plaintiff received the process due in parole revocation hearing, where he had plead guilty. Defendants Williams and Pick motion for summary judgment on this ground is **granted**.

IV. Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). As required by the Saucier Court, this Court first considered (above) the constitutional question, then considered the qualified immunity question, id. The discussion above indicates whether a constitutional violation occurred. Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If it

was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Here, defendants Williams and Pick argue that they are entitled to qualified immunity for plaintiff's termination from the Willard drug treatment program (Docket No. 67, Defs. Memo. at 8-9). Assuming that a constitutional violation occurred in terminating plaintiff from this program, such a right was not clearly established in September 2005 in order to make these defendants liable. But, as stated above, no such constitutional violation has been found here. Thus, Williams and Pick alternatively **are entitled to qualified immunity** and their motion for summary judgment dismissing claims against them is **granted**.

V.     Remaining Claims

As a result of the disposition of the parties' motions herein, the following claims and defendants remain: plaintiff's excessive use of force claim against defendants Bellinger, Chaffee, Colombai, Hart, Stermer, and Taft; and his failure to intervene claims against Hart and Crans, both arising from the alleged September 14, 2005, incident.

CONCLUSION

Plaintiff's motion for partial summary judgment (Docket No. 64) is **denied**. Defendants' motion for summary judgment (Docket No. 66) is **granted in part, denied in part**. In particular, claims against defendants Williams and Pick are **denied and dismissed**; plaintiff's failure to protect claim against all defendants is **dismissed**; the use of force claims against defendants Bellinger, Chaffee, Colombai, Hart, Stermer, and Taft and the failure to intervene

15

claims against Crans and Hart raise material issues of fact and defense motion for summary judgment as to those claims are **denied**.

Separately, the Court will issue a final Pretrial Order scheduling Final Pretrial Conference and Trial.

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 19, 2009